**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| TIFFINI DAVIS, | ) |
| 7411 S. Park RD | ) |
| Kansas City, MO 64129 | ) |
|      Plaintiff, | ) Case No: 4:22-cv-698 |
| | ) |
| | ) |
| | ) |
| KANSAS CITY AREA TRANSPORTATION | ) |
| AUTHORITY | ) |
| Serve: | ) |
| Registered Agent | ) |
| 1200 E. 18TH ST. | ) |
| KANSAS CITY, MO 64108 | ) |
|      Defendant, | ) |

**COMPLAINT**

Plaintiff, TIFFINI DAVIS, by and through his attorneys, states the following as her Complaint:

1.     Plaintiff is, and at all relevant times was, an individual residing in Kansas City, Missouri.

2.     Defendant, Kansas City Area Transportation Authority is a municipality whose primary principal place of business at 1200 E. 18TH ST. Kansas City, Missouri 64108

3.     As a municipality, Defendant is an arm and/or agent of the State of Missouri.

4.     Defendant's actions, inactions, omissions, and/or misconduct as alleged herein occurred by and/or through its agents, servants, and/or employees acting within the course and scope of their employment and/or under color of state law, statute, ordinance, regulation, pattern, policy, procedure, custom, and/or usage.

5.     Plaintiff brings this claim pursuant to 42 U.S.C. §§ 1981 and 1983.

6.      Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343, which provide for original jurisdiction of this Court in suits based respectively on federal questions and authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law, statute, ordinance, regulation, custom, or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of Jackson County, Missouri which is situated within the judicial district for the United States District Court for the Western District of Missouri.

8.      Additionally and/or alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiff's claim occurred in Jackson County, Missouri which is situated within the judicial district for the United States District Court for the Western District of Missouri.

## FACTS COMMON TO ALL COUNTS

1. Plaintiff began employment with Defendant in 2013.

2. In September of 2016, Defendant began discriminating against me because of my race, religion, and gender.

3. I have reported complaints of discrimination to management.

4. Said complaints of discrimination have gone ignored.

5. Defendant has retaliated against Plaintiff for making complaints of discrimination.

6. At all relevant times, Jameson Auten (Auten) was/is the Chief Operating Officer ("COO")

7. Auten passed Plaintiff up for a promotion because I do not identify as Jehovahs witness.

8. Auten treated Plaintiff differently than other similar situated employees, including but not limited to: Crystal Bailey ("Bailey") and Rodney Holloman ("Holloman")

9. Bailey and Holloman identify and Jehovahs witness.

10. In or around September 2016, Plaintiff was suspended by Susan White ("White").

11. White is a Caucasian woman.

12. White accused falsely accused Plaintiff of stealing documents and being insubordinate.

13. Plaintiff was accused of insubordination when Plaintiff returned terminated employees belongings.

14. Said terminated employee is black woman Keyana Dawson ("Dawson")

15. Dawson was terminated because she did not identify and Jehovahs witness.

16. Dawson was terminated because she is a black woman.

17. Defendant spread lies about Dawson throughout the workplace.

18. Mike Graham ("Graham") informed Plaintiff to return Dawsons belongings.

19. Other white, similar situated employees are allowed to return terminated employees belongings.

20. Said similarly situated employees are Debbie Moore ("Moore") and Amy Chamberlain.

21. Patrick Hurley ("Hurley") ultimately wrote Plaintiff up for insubordination.

22. In or around October 2016, Plaintiff was fired by Hurley.

23. Hurley subjected Plaintiff to frivolous write ups, suspension, and termination within a two-month time period.

24. My job was reinstated by the union in December of 2016.

25. Susan White ("Susan") is and/or was the director for Defendant.

26. Susan's race is white.

27. Shortly thereafter, Susan falsely accused Plaintiff of cursing at her.

28. Susan has spread lies about Plaintiff several times throughout her employment.

29. In or around January 2017, Plaintiff was promoted to a non-union job.

30. Plaintiff was promoted by Teresa Bing ("Teresa").

31. Teresa brought in her own team of mostly white employees.

32. Libby Lynch ("Libby") became Plaintiff's manager.

33. Libby is a white woman.

34. Sometime thereafter, Plaintiff became pregnant and went on maternity leave.

35. In or around February 2018, Plaintiff returned from maternity leave.

36. Sherri Shinkle ('Shinkle") is and/ or was an employee with Defendant.

37. Shortly thereafter, Plaintiff was falsely accused of disclosing Shinkle salary.

38. Defendant investigation revealed that Plaintiff had not disclosed Sherri's salary.

39. Plaintiff was falsely accused of disclosing Shinkle salary.

40. Chamberlain is the employee who disclosed Shinkle salary.

41. Chamberlain is a white female employee.

42. Chamberlain was not reprimanded or disciplined for this disclosure.

43. Defendant continued to subject Plaintiff to unwarranted write ups.

44. Defendant nitpicked Plaintiff's work more than other white employees.

45. Plaintiff's job duty was changed, whereby she did not handle benefit issues.

46. Answering phones remained Plaintiff's job responsibility.

47. Employees would call Plaintiff to get help on benefit issues.

48. Plaintiff informed said employees that she was not in charge of benefit issues anymore.

49. Defendant failed to help said employees, thus the employees continued to call Plaintiff over benefit issues.

50. Defendant Human Resources ("HR") department reprimanded Plaintiff for helping said employees.

51. Defendants conduct illustrates unwritten and/or unclear work polices that result in reprimanding Plaintiff.

52. Zandra LNU is a defendant employee that called for benefit help.

53. Shortly thereafter, other white employee began making fun of Zandra during an HR meeting for needing benefit help.

54. This shows the differential treatment of similar situated black employees.

55. During said meeting, Defendant employees began to openly scrutinize Zandra for inability to manage her money.

56. Zandra is a black woman.

57. Said meeting created a hostile work environment due to making fun of black employees, and openly engaging in conversations that warrant confidentiality.

58. Defendant continues to show racial bias by inaccurately reprimanding Plaintiff for disclosing Shinkle salary, while allowing Defendant to openly discuss Zandra money management in an open HR meeting.

59. Said HR meeting was a heated discussion.

60. Shortly thereafter, Alicia LNU ("Alicia") was terminated.

61. Alicia is a black women employee.

62. Alicia was terminated because defendant did not like the way she conducted herself.

63. Defendant human resources investigation attempts to divide white and black employees.

64. Shortly thereafter, Defendant informed Plaintiff that she was being removed from HR

65. In or around September 2019, Shinkle sent emails about being scared of Plaintiff because Plaintiff has "goons".

66. Shortly thereafter, Shinkle was promoted to HR manger and Plaintiff was moved out of the HR office.

67. Shinkle was promoted because she is a white woman and has not made complaints of discrimination.

68. Plaintiff was not promoted because she is a black woman, non-denominational religious affiliation and has made complaints of discrimination.

69. In or around August 2018, Defendant moved Plaintiff to Operations Support Specialist for Transportation.

70. Bobby Edwards ("Edwards") became Plaintiff new supervisor.

71. Between October 2018 and November 2018, Skinkle subjected Plaintiff to two separate investigations for accusing Plaintiff of costing the company money by fraudulently paying Cheryl Hooker.

72. Denise Fields ("Fields") was the investigator over said investigations.

73. Plaintiff was cleared from these accusations.

74. After, clearing Plaintiff of said allegations, Fields informed Plaintiff to watch out because HR has something against her.

75. Plaintiff emailed Bobby Edwards ("Edwards") and Jameson ("Jameson") LNU to report retaliation and discrimination.

76. Bobby and Jameson are and/or were the top mangers in the Defendant workplace.

77. Defendant did not give Plaintiff any feedback, nor conduct any investigation over the reports of discrimination.

78. Hurley gave feedback to white employees regarding investigations.

79. Said white employees are: Shinkle and Chamberlain.

80. The next day, Defendant subjected Plaintiff to another investigation for filling out a W4 in the system.

81. Plaintiff filled out W4 in such manner for years.

82. Denise cleared Plaintiff of allegations once again.

83. While working under Edwards, Plaintiff was subjected to sexual harassment and unwanted touching on over twelve (12) occasions.

84. Plaintiff never agreed to, nor consented to any sexual advance from Bobby.

85. Edwards tried to rub Plaintiff's shoulders.

86. There are several other women that were subjected to said sexual harassment by Defendant.

87. Plaintiff emailed sexual harassment complaint to Sam LNU.

88. In or around March 2019, Defendant conducted one investigation over said sexual harassment.

89. Ultimately, Bobby was terminated for sexual harassment against Plaintiff.

90. Shortly thereafter, Defendant taped Plaintiff W2 with her social security number to the walls throughout Defendant workplace building.

91. There were hundreds of copies of Plaintiff's W2 posted.

92. Upon seeing the W2 posted to the walls, Plaintiff attempted to remove from the walls.

93. Defendant HR wrote Plaintiff up for removing the W2s from wall because Plaintiff was supposed to wait for HR to take them down.

94. Sometime thereafter, Shinkle was promoted to Chief of HR.

95. Plaintiff was informed that she better watch out for her job.

96. This placed Plaintiff is great fear of her job security.

97. Plaintiff role was changed, whereby she could not interact with HR at all.

98. Between March 2020 and April 2020, Lewis LNU changed Plaintiff job description and duties.

99. Plaintiff was no longer responsible for tracking attendance and leave for the transportation department.

100. Plaintiffs new job was to do KPI reports and to look at budgets related to overtime and request off.

101. The previous employee responsible for said duties was a director.

102. Defendant failed to give Plaintiff a director title promotion.

103. Other white, similarly situated employees are given director title when they are promoted to director duties.

104. Other Jehovahs witness are given director title when they are promoted to director duties.

105. Plaintiff was qualified for each position that she was employed.

106. Despite Plaintiff asking for help, Defendant failed to train Plaintiff for aforementioned new duties.

107. HR told Plaintiff to figure it out.

108. Defendant provides help to similar situated white, non-Jehovah witness employees.

109. Plaintiff requested to seek help from previous director, whereby Defendant denied.

110. Between August 2020 and September 2020, Plaintiff job was again moved to budget.

111. Plaintiff received positive feedback and reviews for performing the budget job.

112. Plaintiff requested to work from home since the budgeting job was all computer work.

113. Defendant denied said request to work from home.

114. In or around October 2020, Defendant notified Plaintiff that her position would be eliminated.

115. Defendant did not offer Plaintiff another position, nor a different job within Defendant company.

116. Defendant created a job for Holloman due to his affiliation Jehovah witness.

117. Holloman is a similar situated employee as Plaintiff.

118. Defendant created a job for Bailey due her affiliation as Jehovahs witness.

119. Crystal Bailey is a similarly situated employee as Plaintiff.

120. Defendant provided Plaintiff with a severance agreement.

121. Defendant provided Plaintiff with her last check that was short on vacation time.

122. When Plaintiff contacted Defendant payroll clerk, Defendant refused to answer her call.

123. Plaintiff called Defendant payroll from a blocked number, in which Defendant answered.

124. Plaintiff spoke with Dennis Crego. ("Crego")

125. Crego did not give Plaintiff any feedback for the shortage of vacation time.

126. Defendant put a hold on Plaintiffs check until October 29, 2020.

127. Defendant conducted such action against Plaintiff due to her religious non affiliation with Jehovah's witness.

128. Defendant's unconstitutional patterns, policies, practices, and/or customs of depriving African American employees, including Plaintiff, of his rights, privileges, and/or immunities include, but are not limited to**:**

   a)   unnecessarily reassigning African American employees which, among other things, disrupts the work performed by African American employees;

   b)   requiring African American employees to provide doctors' notes in order to obtain temporary reassignments, but not requiring Caucasian employees to provide the same;

   c)   accepting and/or believing facts and/or information provided by Caucasian employees instead of the accepting and/or believing African American employees;

   d)   disciplining African American employees for, among other things, attendance and/or performance issues while not disciplining Caucasian employees for the same or similar attendance and/or performance issues;

   e)   setting up African American employees to be disciplined and/or fired but not setting up Caucasian employees to be disciplined and/or fired;

   f)   looking for reasons to discipline and/or fire African American employees;

   g)   allowing its "workplace office responsible for investigating claims of discrimination against a supervisor [to] fail[] to act, [to] let such complaints languish, or [to] prematurely terminate[] discrimination investigations" [from which] affected employees would have to conclude that their complaints will not be taken seriously by an indifferent or possibly complicit employer" (*McKinney v. City of Kansas City, Missouri*,

WD81339, *13-14 (Mo. App. W.D. March 05, 2019);

h)      allowing "supervisors and superiors [to] sit on raises, promotions, and re-

assessments, or fail to make eye contact during job interviews, [which] such

improper conduct is as damaging as unwanted physical contact or degrading

comments" *McKinney v. City of Kansas City, Missouri*, WD81339, *14

(Mo. App. W.D. March 05, 2019);

i)      allowing managers or supervisors to "improperly downgrade[]"

performance evaluations "resulting in a lower raise" from which "a minority

employee would be hard -pressed to conclude that race was not at issue

*McKinney v. City of Kansas City, Missouri*, WD81339, *14 (Mo. App.

W.D. March 05, 2019);

j)      allowing "supervisor[s] [to] tells her superiors that work that was supposed

to be done is not being done, and it was the supervisor who instructed the

minority employees not to do work, [from which] the conclusion that they

have been set up to fail is inescapable" *McKinney v. City of Kansas City,

Missouri,* WD81339, *14 (Mo. App. W.D. March 05, 2019);

k)      allowing "supervisor and human resources personnel [to] summarily refuse

to accommodate the needs of a minority employee for time off, but work to

help other employees in a similar situation, and then terminate that

employee without giving a serious thought to a lesser sanction for taking

time off without approval" in which case "motivation is clearly suspect"

*McKinney v. City of Kansas City, Missouri*, WD81339, *14 (Mo. App.

W.D. March 05, 2019);

l)      allowing, condoning, or not disciplining employees who make racist comments and/or racial slurs;

m)      treating Caucasian employees preferentially over African American employees as described herein and in other way to be established by the evidence;

n)      permitting its employees to retaliate, and/or failing to take appropriate steps to prevent or eliminate retaliation, against employees who report harassment, discrimination, and/or a hostile work environment;

p)      failing to adequately train its employees with respect to harassment, discrimination, retaliation, and/or hostile work environment;

q)      failing to adequately investigate complaints of discrimination, harassment, retaliation, and/or hostile work environment;

r)      failing to implement prompt and effective remedial action to end the discrimination, harassment, retaliation, and/or the hostile work environment to which African Americans, including Plaintiff, were subjected when Defendant knew or should have known of the discrimination, harassment, retaliation, and/or the hostile work environment.

129. The following decisions/verdicts are among those in which juries and/or Courts have found that Defendant engaged in racial discrimination/harassment, had a racially hostile work environment, and/or retaliated against employees for reporting discrimination:

a)      *Johnson v. City of Kansas City, Missouri*, Case No. 1616-CV08470. In *Jonson,* the plaintiff alleged that, between approximately 2014 and 2016, Defendant engaged in race discrimination, created a hostile work

environment based on race, and retaliated against him for reporting race discrimination. On April 05, 2019, a jury found Defendant retaliated against Plaintiff for reporting race discrimination, awarded the plaintiff compensatory damages, and assessed punitive damages against Defendant.

b) *McKinney v. City of Kansas City, Missouri*, Case No. 1616-CV02932. In *McKinney*, the plaintiff alleged that, between approximately 2011 and 2015, Defendant engaged in race discrimination, created a racially hostile work environment, and retaliated against her for reporting race discrimination. On August 07, 2017, the jury found Defendant created a racially hostile work environment and awarded compensatory damages. The Missouri Court of Appeals upheld the verdict finding, *inter alia,* that "a reasonable jury would conclude that this ongoing and pervasive conduct, subjectively perceived as racial harassment, added up over time to tell an African-American employee that, on the basis of her race, her work and expertise were not valued." WD81339, *14 (Mo. App. W.D. March 05, 2019)

130. The jury verdicts and/or court decisions described in the preceding paragraph and similar jury verdicts and/or court decisions is further evidence:

a) of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

b) of Defendant's patterns, policies, practices, and/or customs of failing to take

appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited

the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

c)     that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

d)     that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices, and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

131. The following individuals who are, or were, employed by Defendant were permitted by Courts to testify as "me too" witnesses about the harassment, discrimination, hostile work environment, and/or retaliation to which they were subjected while employed by Defendant, including, but not limited to, testifying as follows:

a)     S. Marshall testified in *McKinney v. City of Kansas City, Missouri* that she filed a complaint with the MCHR alleging race discrimination and

retaliation and that Defendant did not investigate her complaints of discrimination. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

b)     R. DePeralta testified in *McKinney v. City of Kansas City, Missouri* that she filed a complaint with the MCHR alleging discrimination and retaliation. She further testified Defendant never investigated her complaints of discrimination, did not speak to the witnesses she identified, and did not talk with her about the working conditions. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

c)     M. DePeralta testified in *McKinney v. City of Kansas City, Missouri* that he filed a complaint of with the MCHR in which he alleged race discrimination and retaliation. He further testified that, in his Charge he alleged "[n]o one from the City ever investigates complaints to a conclusion where employees actually get held accountable for their actions. This is known city wide and it allows management to do whatever they want." Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

d)     N. Wilson testified in *McKinney v. City of Kansas City, Missouri* that she was a Human Relations Specialist/Civil Rights Investigator for Defendant. She further testified she filed complaint with Defendant's HR Office alleging sex discrimination and retaliation. Between 2014 and 2017, she made several complaints to Defendant's directors, managers, and human resources personnel about ongoing harassment, discrimination, and retaliation and it was Defendant's utter lack of response to these complaints

which forced her to file a Charge of Discrimination with the MCHR in May 2017. In July 2017, just weeks before she testified on August 03, 2017, Defendant terminated her employment. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

e) C. Washington testified in *Johnson v. City of Kansas City, Missouri* that he and other African American employees were harassed and discriminated against while working for Defendant. He testified that Caucasian employees were (i) promoted over African Americans; ii) permitted to take courses that African Americans were denied; iii) disciplined less harshly than African Americans; iv) were not disciplined for the same misconduct for which it disciplined African Americans; v) given preferential job assignments over African Americans; and vi) received better training than African American employees. Case No. 1616-CV08470.

f) T. Sanders testified in *Johnson v. City of Kansas City, Missouri* that Defendant discriminated against him on the basis of race. He further testified that i) Caucasian employees were promoted over African American employees; ii) Defendant disciplined African Americans more harshly than Caucasian employees; iii) Defendant disciplined African Americans when it did not discipline Caucasian employees for the same conduct; and iv) Defendant set up African American employees to get them disciplined and/or fired. Case No. 1616-CV08470.

g) W. Dunnell testified in *Johnson v. City of Kansas City, Missouri* that Defendant discriminated against him on the basis of race. He further

testified that (i) Defendant looked for reasons to discipline African American employees; (ii) African American employees were written up for conduct which was not against Defendant's policies but Defendant did not write up Caucasian employees for violating policies; (iii) Caucasian employees were promoted over African American employees; (iv) Caucasian employees were given preferential job assignments over African American employees; (v) Caucasian employees received better training than African American employees; and (vi) Caucasian employees and were given opportunities for more responsibility than African American employees. Case No. 1616-CV08470.

132. The testimony of the witnesses identified in the preceding paragraph and similar witness testimony in other cases is further evidence:

    a)      of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

    b)      of Defendant's patterns, policies, practices, and/or customs of failing to take appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

     c)     that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

     d)     that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices, and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

133. The following cases are among those in which Defendant's employees, or former employees, filed causes of action against Defendant alleging harassment, discrimination, hostile work environment, and or retaliation:

     a)     *Walsh v. City of Kansas City, Missouri*, Case No. 1216-CV05992, aff'd 481 S.W.3d 97 (Mo. App. W.D. 2016);

     b)     *Sanders v. City of Kansas City, Missouri,* Case No.1416-CV29787;

     c)     *Nunley v. City of Kansas City, Missouri*, Case No. 1516-CV26781;

     d)     *McKinney v. City of Kansas City, Missouri*, Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D.  March 05, 2019);

     e)     *Johnson v. City of Kansas City, Missouri*, Case No. 1616-CV08470;

     f)     *Ramsay v. City of Kansas City, Missouri*, Case No.1616-CV12722;

g) *Moses v. City of Kansas City, Missouri,* Case No. 1716-CV00967;

h) *Carter v. City of Kansas City, Missouri*, Case No. 1716-CV12806;

i) *McCormack v. City of Kansas City, Missouri*, Case No. 1716-CV14118;

j) *Moye v. City of Kansas City, Missouri*, Case No.1716-CV14544;

k) *Wilson v. City of Kansas City, Missouri,* Case No. 1716-CV16664;

l) *Jones v. City of Kansas City, Missouri*, Case No. 1716-CV20259;

m) *Vittori v. City of Kansas City, Missouri,* Case No. 1816-CV03729;

n) *Ragan v. City of Kansas City, Missouri,* Case No. 1816-CV09470;

o) *Baker v. City of Kansas City, Missouri*, Case No. 1816-CV11892;

p) *Webster v. City of Kansas City, Missouri,* Case No. 1816-CV14744;

q) *Harris v. City of Kansas City, Missouri,* Case No. 1816-CV18083;

r) *Williams v. City of Kansas City, Missouri*, Case No. 1816-CV18116;

s) *Beckwith v. City of Kansas City, Missouri*, Case No. 1816-CV19787;

t) *Jones v. City of Kansas City, Missouri*, Case No. 1816-CV22819;

u) *Johnson v. City of Kansas City, Missouri*, Case No. 1816-CV33292;

v) *Sohn v. City of Kansas City, Missouri*, Case No. 1816-CV33571; and

w) *Mujahid v. City of Kansas City, Missouri,* Case No. 1916-CV04435.

134. The allegations in the cases identified in the preceding paragraph and in similar cases, along with any decisions, rulings, and/or verdicts therein, provide further evidence:

a) of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

b) of Defendant's patterns, policies, practices, and/or customs of failing to take appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

c) that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

d) that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices, and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

## COUNT I

## DISCRIMINATION BASED ON RACE

135. Plaintiff incorporates by reference all allegations of this Complaint as if set forth herein.

136. By virtue of 28 U.S.C. § 1981, Plaintiff has a right to be free from racial harassment and discrimination by his employer, the Defendant herein, and those acting on behalf of Defendant.

137. Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein:

    a)      constituted, caused, and/or resulted in unlawful employment discrimination against Plaintiff;

    b)      deprived Plaintiff of the rights, privileges, and/or immunities secured by the United States Constitution and/or laws of the United States including, but not limited to, the right to be free from racial discrimination and/or racial harassment;

    b)      resulted in treatment of Plaintiff which, because of his race, was different, adverse, and/or harsher than the treatment of similarly situated employees who are not African Americans;

    c)      constituted, demonstrated, and/or were motivated by discriminatory animus toward African-Americans, including Plaintiff;

    d)      intended, encouraged, endorsed, and/or permitted Defendant's agents and employees to violate the rights of Plaintiff and similarly situated

employees including, but not limited to, discriminating against Plaintiff and similarly situated employees based on race; and/or

    e)    constituted, caused, and/or resulted in Defendant's failure to take prompt and effective remedial action to end the discrimination, harassment, hostile work environment, and/or retaliation to which Plaintiff and similarly situated individuals were subjected when Defendant knew or should have known of the discrimination, harassment, and/or the hostile work environment.

138.    In addition or in the alternative, Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein show Defendant's deliberate and/or reckless indifference to the rights of Plaintiff and those similarly situated.

139.    As a direct and proximate result of Defendant's unlawful and/or unconstitutional actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs, Plaintiff has lost wages; suffered a detrimental job record; and suffered garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, stress, loss of enjoyment of life, and loss of sleep, pain and suffering; and sustained other nonpecuniary losses.

140.    Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant engaged in discrimination, harassment, retaliation, and/or created a hostile work environment either with malice or with reckless indifference to the rights of African American employees,

including Plaintiff.

141.    In addition or in the alternative, Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant exhibited reckless indifference toward the discriminatory, harassing, and/or retaliatory actions taken by those serving in a managerial capacity.

WHEREFORE, Plaintiff prays for Judgment against Defendant finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs deprived Plaintiff of his rights, privileges, and/or immunities; finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or the Fourteenth Amendment to the United States Constitution; awarding Plaintiff actual, compensatory, and punitive damages; awarding Plaintiff all costs, expenses, expert witness fees, and attorneys' fees incurred herein; awarding Plaintiff prejudgment and post-judgment interest at the highest lawful rate; awarding Plaintiff appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position he would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

## COUNT II
### ILLEGAL RETALIATION IN VIOLATION

142. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth herein.

143. During her employment, Plaintiff complained to Defendant and objected to and opposed the discrimination, harassment, and hostile work environment perpetrated on her, and thereby engaging in protected activity under 42 USC 1981.

144. Following Plaintiff's opposition to the discrimination, harassment, and hostile work environment, Defendant failed to investigate Plaintiff's complaints, permitted employees to continue and further harass Plaintiff, and ultimately terminating Plaintiff.

145. Defendant failed to take any remedial action with regard to Plaintiff's complaints.

146. Plaintiff was subject to unwarranted discipline due to complaints that she made.

147. As a direct and proximate result of the retaliatory conduct of Defendant, Plaintiff suffered past and future lost wages and benefits, garden-variety emotional distress, mental anguish, lost career opportunities, damage to her employment record, loss of enjoyment of life, and other non-pecuniary losses.

148. Defendant's conduct was outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages in the amount determined by a jury of his peers.

149. Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, in an amount that is fair and reasonable, for actual damages, compensatory, and punitive damages, all costs, expenses, and attorneys' fees incurred herein, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT III
## DISCRIMINATION BASED ON RELIGION

150. Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

151. Plaintiff, as a member of a religion, is a member of a protected class within the meaning of 42 USC 1981.

152. Plaintiff membership in religion, contributed to Defendant's decision to discriminate against Plaintiff as described herein.

153. Defendant's conduct towards or concerning Plaintiff represents a pattern and practice by Defendant of discriminating against employees on the basis of their religion

154. Defendant's actions and/or inactions as alleged herein constitute unlawful employment discrimination against Plaintiff in violation of the 42 USC 1981.

155. Defendant's actions and/or inactions occurred by and/or through its agents, servants, and/or employees acting within the course and scope of employment.

156. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages including past and future lost wages and benefits; a detrimental job record; career damage and diminished career potential; garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, and loss of sleep; pain and suffering; and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

157. Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, complete indifference to, or conscious disregard for, the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

158. Plaintiff is entitled to recover all costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief. Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein:

a) constituted, caused, and/or resulted in unlawful employment discrimination against Plaintiff;

b) deprived Plaintiff of the rights, privileges, and/or immunities secured by the United States Constitution and/or laws of the United States including, but not limited to, the right to be free from racial discrimination and/or religious harassment;

b) resulted in treatment of Plaintiff which, because of his race, was different, adverse, and/or harsher than the treatment of similarly situated employees who are not Jehovahs witness;

c) constituted, demonstrated, and/or were motivated by discriminatory animus toward African-Americans, including Plaintiff;

d) intended, encouraged, endorsed, and/or permitted Defendant's agents and employees to violate the rights of Plaintiff and similarly situated employees including, but not limited to, discriminating against Plaintiff and similarly situated employees based on race; and/or

e) constituted, caused, and/or resulted in Defendant's failure to take prompt and effective remedial action to end the discrimination, harassment, hostile work environment, and/or retaliation to which Plaintiff and similarly situated individuals were subjected when Defendant knew or should have known of the discrimination, harassment, and/or the hostile work environment.

159. In addition or in the alternative, Defendant is accountable under 42 U.S.C. § 1983 for its

violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein show Defendant's deliberate and/or reckless indifference to the rights of Plaintiff and those similarly situated.

160. As a direct and proximate result of Defendant's unlawful and/or unconstitutional actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs, Plaintiff has lost wages; suffered a detrimental job record; and suffered garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, stress, loss of enjoyment of life, and loss of sleep, pain and suffering; and sustained other nonpecuniary losses.

161. Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant engaged in discrimination, harassment, retaliation, and/or created a hostile work environment either with malice or with reckless indifference to the rights of African American employees, including Plaintiff.

162. In addition or in the alternative, Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant exhibited reckless indifference toward the discriminatory, harassing, and/or retaliatory actions taken by those serving in a managerial capacity.

WHEREFORE, Plaintiff prays for Judgment against Defendant finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs deprived Plaintiff of his rights, privileges, and/or immunities; finding Defendant's acts, omissions, misconduct, patterns,

policies, practices, and/or customs violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or the Fourteenth Amendment to the United States Constitution; awarding Plaintiff actual, compensatory, and punitive damages; awarding Plaintiff all costs, expenses, expert witness fees, and attorneys' fees incurred herein; awarding Plaintiff prejudgment and post-judgment interest at the highest lawful rate; awarding Plaintiff appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position he would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

## COUNT IV
## HOSTILE WORK ENVIRONMENT IN VIOLATION

163. Plaintiff incorporates by reference all allegations of this Complaint as if set forth fully herein.

164. By virtue of 28 U.S.C. § 1981, Plaintiff had a right to be free from a racially hostile work environment.

165. Plaintiff was subjected to unwelcome discrimination, harassment, and/or retaliation based on Plaintiffs race as described herein.

166. The discrimination, harassment, and/or retaliation to which Plaintiff was subjected as alleged herein caused his workplace to be permeated with discriminatory intimidation, ridicule, and/or insult.

167. Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or Plaintiff's Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein:

   a) constituted, caused, and/or resulted in unlawful employment discrimination against Plaintiff;

b)      constituted, caused, and/or resulted in Plaintiff's workplace being permeated with discriminatory intimidation, ridicule, and/or insult;

c)      constituted, caused, and/or resulted in Plaintiff being subjected to discrimination, harassment, retaliation, intimidation, ridicule, and/or insult that was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment;

d)      deprived Plaintiff of the rights, privileges, and/or immunities secured by the United States Constitution and/or laws of the United States including, but not limited to, the right to be free from a racially hostile work environment;

e)      constituted, caused, and/or resulted in a work environment for Plaintiff which, because of his race, was different, adverse, and/or harsher than the environment of similarly situated employees who are not African Americans;

f)      constituted, demonstrated, and/or were motivated by discriminatory animus toward African-Americans, including Plaintiff;

g)      intended, encouraged, endorsed, and/or permitted Defendant's agents and employees to violate the rights of Plaintiff and similarly situated employees including, but not limited to, creating and/or maintaining racially hostile work environment; and/or

h)      constituted, caused, and/or  resulted in Defendant's failure to take prompt and effective remedial action to end the hostile work environment to which Plaintiff and similarly situated individuals were subjected when Defendant

knew or should have known of the hostile work environment.

168.    In addition or in the alternative, Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein show Defendant's deliberate and/or reckless indifference to the rights of Plaintiff and those similarly situated.

169.    As a direct and proximate result of Defendant's unlawful and/or unconstitutional actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs, Plaintiff has lost wages; suffered a detrimental job record; and suffered garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, stress, loss of enjoyment of life, and loss of sleep, pain and suffering; and sustained other nonpecuniary losses.

170.    Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant engaged in discrimination, harassment, retaliation, and/or created a hostile work environment either with malice or with reckless indifference to the rights of African American employees, including Plaintiff.

171.    In addition or in the alternative, Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant exhibited reckless indifference toward the discriminatory, harassing, and/or retaliatory actions taken by those serving in a managerial capacity.

WHEREFORE, Plaintiff prays for Judgment against Defendant finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs deprived Plaintiff of his rights,

privileges, and/or immunities; finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or the Fourteenth Amendment to the United States Constitution; awarding Plaintiff actual, compensatory, and punitive damages; awarding Plaintiff all costs, expenses, expert witness fees, and attorneys' fees incurred herein; awarding Plaintiff prejudgment and post-judgment interest at the highest lawful rate; awarding Plaintiff appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position he would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on the issues herein.

Respectfully submitted,

LUNCEFORD LAW FIRM, LLC

by: */s/ David Lunceford*

David A. Lunceford, MO #47014
201 SE First Street
Lee's Summit, Missouri 64063
Telephone: (816) 525-4701
Facsimile: (816) 347-0366

LLF.DLunceford@gmail.com
ATTORNEYS FOR PLAINTIFF